HOWARD KIM & ASSOCIATES
HOWARD C. KIM, ESQ.
Nevada Bar No. 10386
E-mail: howard@hkimlaw.com
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
E-mail: jackie@hkimlaw.com
400 N. Stephanie St, Suite 160
Henderson, Nevada 89014
Telephone: (702) 485-3300
Facsimile: (702) 485-3301

E-filed on: November 4, 2011

*Attorneys for* David A. Rosenberg, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>    HOTELS NEVADA, LLC,<br><br>                              Debtor. | In Proceedings Under Chapter 11<br><br>Case No.  2:09-bk-31131-bam<br><br>Case No.  2:09-bk-31132-bam<br><br>(Jointly Administered Under<br>Case No. 2:09-bk-31131-bam) |
| In re<br><br>    INNS NEVADA, LLC,<br><br>Debtor. | **ADVERSARY COMPLAINT**<br><br>Adv. No.  2:09-bk-11-_____-bam<br><br>Courtroom No.:    3 |

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST, SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

DAVID A. ROSENBERG, Chapter 7 Trustee;

Plaintiff,

vs.

HARVEY A. BOOKSTEIN, a California Accountancy Corporation; HARVEY A. BOOKSTEIN, an individual; HAR AIRPORT, LLC, a California Limited Liability Company; HAR SAN JACINTO PARTNERS, LLC, a California Limited Liability Company, cancelled; HAR BRONSON DIVERSIFIED LLC, a California Limited Liability Company; HAR SJS PARTNERS, LLC, a California Limited Liability Company, cancelled; RBZ, LLP, a California Limited Liability Partnership; REDWOOD SQUARE, LLC, a Nevada Limited Liability Company, ALLYN R. BURROUGHS, an individual, SAN JACINTO SQUARE, LLC, California Limited Liability Company, cancelled, LOUIS A. HABASH, an individual, A.S.S.I., INC, a Nevada Corporation, in default, MITOS PHARMACEUTICALS INC., a Delaware Corporation, A.P.R., INC., a Nevada Corporation, in default, A.P.H., INC., a Nevada Corporation, in default, APIH, LLC, a Nevada Limited Liability Company, SILVERLEAF DEVELOPMENT, LLC, a California Limited Liability Company, cancelled, SILVERLEAF DEVELOPMENT II, LLC, a California Limited Liability Company, cancelled, PICTET & CIE, a Swiss Banking Company; GILCHRIST & RUTTER, PC, ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS, LLP, KLUEGER & STEIN, LLP, a California Limited Liability Partnership, FENIGSTEIN & KAUFMAN, a California Professional Corporation, DOES I through X inclusive, and ROES I through X, inclusive;

Defendants.

Hon. Bruce A. Markell

Scheduling Conference:

Date: _____

Time: _____

DAVID A. ROSENBERG, solely in his capacity as Chapter 7 Trustee (the "Trustee") for the jointly administered bankruptcy estates ("Estates") of Hotels Nevada, LLC ("Hotels") and Inns Nevada, LLC ("Inns")(together "Debtors"), by and through his

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

- 2 -

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

counsel of record, Howard Kim & Associates, respectfully submits this adversary complaint against defendants HARVEY A. BOOKSTEIN, AN ACCOUNTANCY CORPORATION ("HABAC"), HAR AIRPORT, LLC ("H-Airport"), HAR-SAN JACINTO PARTNERS, LLC ("HSJP"), HAR BRONSON DIVERSIFIED LLC ("HBD"), HAR SJS PARTNERS, LLC ("HSJS"), HARVEY A. BOOKSTEIN ("Bookstein"), RBZ, LLP ("RBZ") (Bookstein, HABAC, H-Airport, H-SJP, HBD, and H-SJS sometimes collectively referred to herein as "Bookstein Defendants"), REDWOOD SQUARE, LLC ("Redwood"), ALLYN R. BURROUGHS ("Burroughs"), LOUIS A. HABASH ("Habash"), SAN JACINTO SQUARE, LLC ("SJS"), A.S.S.I., INC. ("ASSI"), A.P.R., INC. ("APR"), A.P.H., INC. ("APH"), APIH, LLC ("APIH"), SILVERLEAF DEVELOPMENT, LLC ("Silverleaf"), SILVERLEAF DEVELOPMENT II ("Silverleaf II") (Silverleaf and Silverleaf II collectively referred to herein as the "Silverleaf Defendants"), PICTET & CIE ("Pictet"), GILCHRIST & RUTTER, PC ("Gilchrist & Rutter"), ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP ("Allen Matkins"), KLUEGER & STEIN, LLP ("Klueger & Stein"), FENIGSTEIN & KAUFMAN, PC ("Fenigstein & Kaufman"),   and MITOS PHARMACEUTICALS INC. ("Mitos"),  and alleges as follows:

## I.

## NATURE OF THE ACTION

1.      Debtors are part of a large web of entities owned and/or controlled by Defendant Habash and a small group of close associates.  These entities generally have the same officers, the same offices, and most existed only on paper.  Yet, Habash and his group used these controlled entities to extract millions of dollars from Debtors.  These funds were misappropriated by Habash and others to pay for personal expenses and for debts owed by non-Debtors.

2.      Debtors sold their real property to L.A. Pacific Center, Inc. ("L.A. Pacific") in 2004 for $70 million (to transfer actual title to the property) plus an extra payment of $5 million due to Inns.  Less than a year later, in 2005, Habash instigated litigation to rescind the sale contract because of a dispute over whether the extra payment was due in

twelve or sixty months.  The dispute was ultimately sent to arbitration.

3.     In 2008, during the course of the costly litigation Clark County agreed to pay Debtors $50 million to settle an inverse condemnation action Debtors had brought in 1999.  Habash stripped Debtors of the net $40 million in Settlement Proceeds using his web of paper entities, transferring the proceeds to another entity and to his accountant.

4.     After an arbitration panel issued a $140 million award against Debtors and Habash, Habash transferred the remaining $6 million to his accountant.  Ultimately, either Habash or his accountant transferred the final $5 million of the Settlement Proceeds to a Swiss bank.  Shortly thereafter, on November 5, 2009, Habash plunged Debtors, as assetless shells, into bankruptcy, filing for protection under chapter 11 of the United States Bankruptcy Code in this Court.  This Court found that the Chapter 11 filing was not in good faith and converted the cases to ones under Chapter 7, for which the Trustee was appointed.

5.     The law and longstanding principles of equity and justice do not allow Habash and his group to use this corporate shell game to enrich themselves at the expense of Debtors and their now confirmed judgment creditor, L.A. Pacific.  The Trustee seeks by this action, and by another action filed this day in this Court, to recover for the Debtors' estates and their creditors the tens of millions of dollars wrongfully appropriated from Debtors by the Defendants.

## II.

## THE PARTIES

6.     David A. Rosenberg is the duly appointed chapter 7 panel trustee for the above-captioned bankruptcy cases.

7.     On information and belief, defendant HABAC is a professional accountancy corporation organized under the laws of the State of California.

8.     Defendant H-Airport is a limited liability company organized under the laws of the State of California.

9.     Defendant HSJP is a limited liability company, organized under the laws of

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

the State of California, and currently in a cancelled status with the Office of the Secretary of State for the State of California ("California SOS").

10.    Defendant HBD is a limited liability company organized under the laws of the State of California.

11.    Defendant HSJS is a limited liability company, organized under the laws of the State of California, and currently in a cancelled status with the California SOS.

12.    Defendant RBZ is a limited liability partnership of accountants organized under the laws of the State of California.  RBZ is, and was at all relevant times, the accounting agency used by Debtors.

13.    Defendant Bookstein is an individual who presently resides in the State of California, is a certified public accountant and, on information and belief, is the owner, partner, principal, member, officer, or manager of each of the Bookstein Defendants.

14.    Defendant Redwood is a limited liability company organized under the laws of the State of Nevada.

15.    Burroughs is an individual who presently resides in the State of Arizona, is the manager of Redwood, and on information and belief is an owner, member, and principal of Redwood.

16.    Burroughs is also an officer in the two companies that managed the Debtors, A.P.R. Inc. and A.P.H. Inc. (which managed Inns and Hotels respectively).

17.    Defendant Habash is an individual who presently resides in the State of California, is the owner and principal of Debtors, is the president and director of ASSI, and is the manager of SJS.

18.    The Trustee has reason to believe that Habash was an owner or manager of the Silverleaf Defendants, is an officer of defendant Mitos, and is a controlling shareholder, officer, or manager of APR and APH.

19.    Defendant SJS is a limited liability company, organized under the laws of the State of California, and currently in a cancelled status with the California SOS.

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

20.    Defendant ASSI is a corporation organized under the laws of the State of Nevada.

21.    Defendant APR is a corporation organized under the laws of the State of Nevada, currently in default status with the Office of the Secretary of State of the State of Nevada ("Nevada SOS").

22.    Defendant APR was Inns' manager.

23.    Defendant APH is a corporation organized under the laws of the State of Nevada, currently in default status with the Nevada SOS.

24.    Defendant APH was Hotels' manager.

25.    Defendant APIH is a limited liability company organized under the laws of the State of Nevada.  The principal of APIH is Mary R. Klink.  According to Debtors accounting records, Ms. Klink answered questions from RBZ regarding Inns accounting.  Thus, on information and belief, Ms. Klink is an insider of Debtors.

26.    Defendant Pictet is a banking institution organized under the laws of Switzerland, providing investment services in the United States through its subsidiary Pictet North America Advisors, registered with the Securities and Exchange Commission.

27.    Defendant Gilchrist & Rutter is a limited liability partnership law firm organized under the laws of the State of California.  The Trustee has reason to believe that this law firm represented defendant Bookstein and/or one of his entities and/or the Bookstein defendants in his litigation against Habash.

28.    Defendant Allen Matkins is a limited liability partnership law firm organized under the laws of the State of California.  Allen Matkins represented Habash and Debtors at or about the time that ASSI transferred assets to HABAC.

29.    Defendant Klueger & Stein is a limited liability partnership law firm organized under the laws of the State of California.   The Trustee has reason to believe that Klueger & Stein represented defendants Habash, SJS, Redwood, and/or Burroughs.

30.    Defendant Fenigstein & Kaufman is a professional corporation, a law firm, organized under the laws of the State of California.  Fenigstein and Kaufman represented

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

Debtors and Habash in the underlying litigation.

31.     There may be other persons or entities, whether individuals, corporations, associations, or otherwise, who are named herein as "Doe" or "Roe" respectively, and have, or may have, taken part in the conduct that is set forth in the Complaint and constitutes legally responsible acts, omissions, circumstances, happenings, and/or the damages or other relief requested by this adversary proceeding.  The Trustee will seek leave of this Court to amend the Complaint herein to name such other defendants when they become known to him.

**III.**

**JURISDICTION AND VENUE**

32.     On November 5, 2009, Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On June 29, 2010, this Court entered an order converting the cases to ones under chapter 7, where both are now pending in the United States Bankruptcy Court for the District of Nevada, Las Vegas Division, jointly administered under the case number 2:09-bk-31131-bam (the "Bankruptcy Case").

33.     Jurisdiction and venue for this action are proper in the United States Bankruptcy Court for the District of Nevada under 28 U.S.C. §§ 157, 1334(b), and 1409(a).

34.     This action is a core proceeding pursuant to Fed. R. Bankr. P. ("Rule") 7001 and 28 U.S.C. §§ 157(b)(2)(E) and (F), because this Complaint seeks to avoid and recover transfers of property and payments made to Defendants pursuant to 11 U.S.C. §§ 542, 544, 547, 548, 549, 550, and 551.  If this adversary proceeding is determined to be "noncore," the Trustee still consents to this matter being heard and to the entry of final orders or judgments by the Bankruptcy Court.

**IV.**

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**A.      Underlying Dispute and Events Leading Up to Arbitration**

35.     In the Spring of 2004, Hotels and Inns—both of whom are owned and

**HOWARD KIM & ASSOCIATES**
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

- 7 -

controlled by Louis A. Habash ("Habash")—sold to L.A. Pacific Center, Inc. ("L.A. Pacific") two adjoining Las Vegas commercial properties commonly known as the Alexis Park Resort Hotel and the Americana Inn Apartments (collectively, the "Property"). Pursuant to the Purchase and Sale Agreement ('PSA"), L.A. Pacific agreed to pay (and paid) a $70 million purchase price, and further agreed to pay $5 million more in "additional consideration" to Inns upon the passing of the earliest of three special contractual triggers.

36.    At closing on May 27, 2004, L.A. Pacific paid—and Debtors received—the $70 million, and Debtors transferred title to L.A. Pacific.

37.    A dispute arose over whether the outside payment date for the $5 million additional consideration was twelve (12) months or sixty (60) months.

38.    On May 4, 2005, before payment was due under any of the payment triggers, Debtors sued L.A. Pacific in California for tort damages and to rescind the sales transaction (the "California Action").  Debtors also filed lis pendens against the Property. L.A. Pacific filed a number of contract and tort based counterclaims.

39.    In 2006, when the Los Angeles Superior Court ordered the lis pendens expunged upon L.A. Pacific posting a $5 million bond, Debtors came to Nevada, filed an almost identical complaint and filed more lis pendens (the "Nevada Action").

40.    Debtors dismissed their California complaint and were able to secure dismissal of L.A. Pacific's tort based counterclaims pursuant to the California anti-SLAPP statute.  L.A. Pacific filed its counterclaims in the Nevada Action.

41.    L.A. Pacific, however, had filed a motion to compel arbitration and, despite Debtors' dismissing their California complaint, the Los Angeles Superior Court ordered the parties to arbitration.

42.    The Nevada Supreme Court reversed an order denying arbitration in the Nevada Action, but stayed the proceedings pending the outcome of the arbitration that had been ordered in California.

**B.**    **The Arbitration**

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

43.    In arbitration, Debtors[1] asserted their claims against L.A. Pacific, and L.A. Pacific, in turn, asserted <u>new claims</u> against Debtors and Habash (for, among other things, fraud and breach of contract), which had not been asserted anywhere before and were not pending before any court.

44.    Thereafter, Habash, the Debtors and Silverleaf stipulated to add L.A. Pacific's counterclaims from the Nevada Action to the arbitration, so long as Habash, et al. could challenge those counterclaims based on Nevada's anti-SLAPP statute.

45.    Prior to opening statements, the agreed-upon panel of three arbitrators (the "Panel") upon reading the motions and hearing argument, determined that Nevada's anti-SLAPP statute did not apply to L.A. Pacific's Nevada counterclaims.[2]

46.    The parties proceeded to try their respective claims to the Panel pursuant to Nevada substantive law and the AAA Rules for Complex Disputes as provided in the parties' arbitration agreement, over a four week period.

47.    On July 27, 2009, the Panel made its ruling, issuing an interim award in L.A. Pacific's favor, which included the following key points:

a.    Since Habash did not name Silverleaf as a party in his post-arbitration brief, and no evidence ever was offered on Silverleaf's behalf. Accordingly, Silverleaf and any purported claims were dismissed for a complete failure of proof.

b.    The pivotal issue to be decided was what the parties had agreed to in terms of the outside payment date for the $5 million in additional consideration owing to Inns under section 2.06(b) of the parties' purchase and sale agreement; on that issue, Habash had in fact agreed to a 60-month outside payment date, and his claims (all of which were premised on the absence of such an agreement) were baseless.

c.    "Plainly in the mind and actions of claimants' chief executive [Habash] the unity of interest and ownership between them was complete and inseparable. Enormous damage was done to [L.A. Pacific] in the names of claimants by their chief executive, 'such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.' <u>Lorenz</u>, 114 Nev. at 807. **The panel finds Habash is the *alter ego* of Hotels Nevada, LLC and Inns Nevada, LLC.**"

[1]  In the Nevada Action, defendant Silverleaf was added as a plaintiff. Silverleaf voluntarily asserted itself into the arbitration.

[2]  All but one of L.A. Pacific's counterclaims raised in the California action were dismissed on the basis of the California anti-SLAPP statute.

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

d.      On its abuse of process claim, L.A. Pacific had proven all the elements of its claims for abuse of process, slander of title, and interference with contract, including damage in excess of $140 million. **After corrections and offsetting the additional $5 million otherwise owing to Inns under the PSA, L.A. Pacific's tort damages ultimately were fixed at $140,340,000.**

e.      L.A. Pacific had proven that Habash had breached the agreement to indemnify L.A. Pacific against a claim by Habash's broker, and that L.A. Pacific had been damaged thereby in the amount of $31,269.

f.      On its fraud claim, claims for breaches of warranties in the PSA and claim for breach of the purchase and sale agreement through assertion of a false contract term, L.A. Pacific had proven the elements of such claims. Because the damages were the same as the damages caused by the abuse of process, interference and slander of title, these claims were "denied as injury without economic damage."

g.      While Habash had breached the agreement to arbitratiot: (i) "damages for breach of the agreement to arbitrate, beyond merely duplicating respondent's tort damages, have not been shown:" nevertheless, (ii) "Respondent will be awarded prevailing party attorneys' fees and costs" to compensate for the remaining damages for breach of the agreement to arbitrate, which "began to accrue" when "the motion [to compel arbitration] was filed."

h.      L.A. Pacific was entitled to declaratory relief quieting title in its favor and canceling certain instruments of record against its property.

i.      L.A. Pacific "has proved by clear and convincing evidence that claimants' alter ego, Habash, has been guilty of oppression, fraud and malice in committing the torts of abuse of process, slander of title and intentional interference with contract, and the panel so finds." Additional punitive damages would not be assessed, however, because "the enormous compensatory damages we award today are equally sufficient for the sake of example and by way of punishing Habash."

48.      Based on these findings, the Panel, among other things, awarded L.A. Pacific more than $140 million in damages as against Habash and Debtors (jointly and severally) and quieted title in L.A. Pacific's favor.

## C.      Post-Interim Award through Final Award Proceedings

49.      After issuance of the July 27 Award, Habash and his lawyers (i) attempted to challenge the award in a variety of forums, (ii) maneuvered to delay entry of judgment; and (iii) secreted Debtors' assets. Here, chronologically, is how events unfolded:

50.      On August 25, 2009, L.A. Pacific secured a temporary protective order ("TPO") from the Los Angeles Superior Court enjoining Mr. Habash from transferring assets.

51.     Yet, as discussed infra, Mr. Habash transferred a number of assets that the Trustee has reason to believe belonged to Debtors and are, thus, property of the Estates.

52.     Habash applied to the Los Angeles Superor Court to attempt to stop the arbitration from proceeding, invalidate the July 27, 2009 award, and invalidate L.A. Pacific's TPO.  Judge Highberger denied the application after being presented with a whole new cadre of Habash lawyers, including defendants Allen Matkins and Fenigstein & Kaufman.

53.     Concerned the Habash lawyers were making attacks to buy time for the secretion of assets, Judge Highberger warned that he would consider an "OSC re potential sanctions . . . if petitioners persist with this request in Dept. 307."  He further admonished that:

> Each new counsel for petitioners is each personally chargeable with complete familiarity with the entire record of this proceeding in this court, the Nevada courts, and in the arbitration, and an excuse of alleged ignorance of past proceedings will be unpersuasive to this Court.  They should be aware, in particular, that <u>it is obvious on this record that Louis Habash has a verified record of secreting funds away from their proper use in violation of his fiduciary and legal duties.  His accountant, Harvey Bookstein, is apparently both his victim and his accomplice in doing this.</u>

54.     On October 27, 2009, the Panel issued and served on the parties its "Final Award."  The Final Award did not disturb any of the Panel's prior determinations and only (i) made corrections to reduce the damage award by $1,201,500 as suggested by L.A. Pacific, and (ii) awarded L.A. Pacific an additional $3 million in fees and $759,100 in costs incurred in the arbitration proceeding.  The total amount of the Final Award was $144,130,369.

55.     Within days, on November 5, 2009, Debtors filed for Chapter 11 bankruptcy protection.  Debtors' summary of schedules stated that their debts exceeded their assets.

56.     On November 6, 2009, L.A. Pacific filed in Los Angeles Superior Court a motion to confirm as to Habash only, because the automatic stay precluded proceeding against Debtors.

**HOWARD KIM & ASSOCIATES**
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

57.     After the Bankruptcy Court lifted the automatic stay to allow L.A. Pacific to pursue to finality confirmation of the award (but not to execute against Debtors), the Los Angeles Superior Court heard the confirmation motion against Debtors and Habash together.    The California Court granted L.A. Pacific's motion to confirm and denied Debtors' and Habash's motions to vacate.  Judgment in favor of L.A. Pacific was entered on March 16, 2010.

58.     Debtors and Habash appealed the Superior Court's decision.

59.     The Trustee has since dismissed the Debtors' appeal of the award and judgment as part of a Court-approved settlement agreement with L.A. Pacific [see main case Dkt. No. 648].

60.     The Court of Appeal of California, Second Appellate District, issued Remittitur on October 24, 2011, making the judgment and fee order in favor of L.A. Pacific final and conclusively binding as between Debtors and L.A. Pacific.  Habash's appeal is still proceeding, without affecting the Trustee's ability to exercise Debtors' rights vis-à-vis Habash.

**D.     Bookstein's Involvement with Debtors**

61.     During the course of the litigation, L.A. Pacific discovered that, several years prior to the sale, Bookstein had lined up investors to place $7 million with Inns Nevada through a company called Har-Inns Nevada, LLC.

62.     According to Bookstein, Habash took Inns' $7 million for his own purposes.

63.     During a deposition taken in the litigation, Habash explained that he, as Debtors' owner, is entitled to freely move money from one company to another at will:

> Q.     (By MR. BERTZYK)  Okay.  But on this transaction with the 7 million dollars that went into Inns Nevada, you did put it to purposes you saw fit, correct?
>
> A.     I was paying 10 percent, and the answer, yes.
>
> Q.     Okay.  So as long as they got their money and 10 percent, **_they should be happy, and its none of their business?_**
>
> A.     **_That's correct_** . . . .

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

(Habash Dep. at 42-43 (emphasis added).)

64.     Ultimately, Habash gave Bookstein and the investors a stipulated judgment admitting to defalcation, which Bookstein could record if Habash did not pay the investors back the $7 million on terms and a time frame to their satisfaction.

65.     Trustee believes that the threat of the stipulated defalcation judgment being recorded against him, coupled with Bookstein's coercion and demand for payment, may have been the impetus for Habash to agree to the PSA and sell Debtors' property on L.A. Pacific's terms, including the sixty month outside date for payment of the additional $5 million.

66.     Habash paid back Bookstein using the sales proceeds.

67.     In fact, Debtors paid off all their outstanding debts with the $70 million.

**E.     Habash Reduces Hotels and Inns to Assetless Shells After the Sale**

68.     Even after paying off Bookstein and all other creditors, millions of dollars in sales proceeds still should have been left over for Debtors.

69.     With the exception of $500,000 (which was drained paying claims by brokers Habash had stiffed on the sale), the residual sales proceeds did not go to debtors; instead they went to a separate Habash company, defendant ASSI.  (Habash Dep. 185:18-187:16.)

70.     According to records subpoenaed by L.A. Pacific, ASSI received $4,490,630 on March 29, 2004, and $7,659,672.13 on May 27, 2004 — and, ASSI's bank records confirm that all this money is long gone. (BA 000005-000012.)

71.     When pressed to explain why he gave Debtors' funds to a different company, Habash has offered defiant responses such as "it's my money" (his story in the arbitration) and "I would like to also mention **they are all my companies**" (his story to Judge Highberger)(9/4/07 Tr. at 173:3-22).

**E.     Judge Highberger's Warning**

72.     In an order entered on June 2, 2008 awarding L.A. Pacific approximately

**HOWARD KIM & ASSOCIATES**
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

$640,000 in fees and costs as the prevailing party on Debtors' dismissed California complaint, Judge Highberger noted that Habash's transferring Debtors' assets had left Debtors without the means to pay a judgment.

73.    Specifically, Judge Highberger ordered that Debtors must post a bond if they wished to stay enforcement pending appeal, based upon the following findings:

- "[T]he amounts owing by [Debtors] are substantial and, based upon the record in this case, [Debtors] appear to lack the means to satisfy the fees and costs awarded by this Court";

- "Any hardship to [Debtors from a bond] pales in significance to the very real prospect that, at the end of the day, L.A. Pacific will be left with assetless shells to pursue with respect to awards that only will grow at the rate of 10% per annum (plus still more fees and costs, after the appeals conclude, for successfully defending the appeals)."

**F.    Debtors Settle an Inverse Condemnation Action Against Clark County for $50 Million: Yet They Remained Assetless Shells**

74.    Debtors still had one potential asset, however.

75.    On or about July 12, 1999, Debtors initiated an inverse condemnation action against Clark County, Nevada (the "County").

76.    In that lawsuit, Debtors claimed that the County, through an ordinance enacted in 1990, had taken the aerial rights of way from the Debtors without paying just compensation.

77.    On August 6, 2009, the parties filed a "Settlement Stipulation and Judgment in Condemnation of Airspace Interests in Real Property (the "Settlement")," in which Debtors (the defined plaintiffs in the agreement) would receive $50 million (the "Settlement Amount").

78.    The Settlement required the County to pay Debtors the Settlement Amount within sixty days, by check payable to Debtors' attorney, Laura Fitzsimmons' trust account.

79.    The County paid the Settlement Amount by depositing $50 million in Laura

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

Fitzsimmons' trust account on or about October 3, 2009.

***Debtors had a legal and equitable interest in the $50 million.***

80.     In a declaration made under penalty of perjury dated August 14, 2008 that was directed to the arbitration Panel, Fitzsimmons, on behalf of Debtors, stated that she had filed the third amended complaint in April 2007, clarifying "that Hotels Nevada [defined as both Debtors] was the owner of the subject property 'at all relevant times' to the pending litigation" over the appropriated aerial rights of way.

81.     Fitzsimmons also clarified Nevada law on the subject of takings: "the owner at the time of the taking is solely entitled to the compensation, which is a personal, not a property right."

82.     The settlement itself clearly states in section 3.1 that, although other non-parties were necessary to reaching the settlement, the compensation was being paid to Debtors only:

> 3.1     The County shall pay Plaintiffs a total of FIFTY MILLION DOLLARS ($50,000,000) (the "Settlement Amount") as settlement for Plaintiffs' claims for compensation for the condemnation of the Aerial Rights of Way."

83.     Fitzsimmons was paid $10 million based on the contingency fee agreement, leaving $40 million for Debtors (the "Settlement Proceeds")

84.     Habash initially instructed Fitzsimmons to wire transfer the Settlement Proceeds to Inns Nevada's bank account.

85.     Then, despite Debtors being embroiled in costly litigation—both of Debtors' affirmative claims and L.A. Pacific's counterclaims for multimillions in damages—Habash changed those instructions and directed Fitzsimmons to wire $19.4 million directly to ASSI and $20.6 million directly to HABAC.

86.     Those transfers took place on or about October 3, 2008 (HABAC) and October 6, 2008 (ASSI).

87.     Debtors had a legal and equitable interest in the Settlement Proceeds

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST, SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

because they were the legal title owner of the aerial rights which were the subject of the inverse condemnation action.

88.    Inasmuch as Debtors had no business to operate and no creditors at that time other than L.A. Pacific, those Settlement Proceeds should have remained with Debtors and should now be property of the Estates.  As discussed above, in June 2008, the Los Angeles Superior Court had already awarded L.A. Pacific prevailing party attorney fees. The actual arbitration trial was just around the corner.  The fees for the Panel alone would run more than $1 million.

89.    Furthermore, as Debtors' accounting records show, Habash put Debtors into even more debt by having them "borrow" more money from ASSI, which the Trustee has reason to believe were the same funds that belonged to Debtors in the first place.

## G.    The $20.6 Million Transfer to HABAC and Beyond

### Bookstein Testifies that Habash's *Other* Companies Had Borrowed Money

90.    Although Mr. Bookstein and his companies had been paid back from the Sales Proceeds (and thus had no right to the Settlement Proceeds), Bookstein testified to the existence of other Bookstein companies having investments in ***other Habash companies*** – approximately $21 million worth of investments. (2/26/09 Tr. at 33:9-35:2.)

91.    When Bookstein was asked point blank if the money was still invested with those other Habash companies, he answered that Habash had made substantial payoffs:

Q.    How -- how recently has he repaid you on the -- from $21 million down to 5-?

A.    It goes up and down, but the last payment was sometime earlier this year.

Q.    How much earlier?

[OVERRULED OBJECTION OMITTED]

THE WITNESS: I don't know.  The year is only eight weeks old. Sometime in the last eight weeks.

BY MR. BERTZYK:

Q.    And how large was that payment?

[OVERRULED OBJECTION OMITTED]

THE WITNESS:  A little over 20 million.

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

BY MR. BERTZYK:

Q.    Do you have any idea where Mr. Habash came up with that kind of money?

A.    No.

Q.    ***Would it surprise you if the money came from a settlement for $50 million he got from Clark County?***

[OVERRULED OBJECTION OMITTED]

***THE WITNESS: No.***

BY MR. BERTZYK:

Q.    You haven't heard anything to that effect?

A.    No.  You asked me would it surprise me.

Q.    Okay.  Do you know where -- does that refresh your memory as to a possible source of the money Mr. Habash got to pay you?

A.    It's a possible source.

. . .

Q.    Are you aware of any source other than that $50 million in settlement proceeds that could have generated a pot of money to pay you $20 million?

A.    He had -- he does a lot of transactions, but I'm not aware of any specifically.

Q.    Okay.  You are aware of the $50 million settlement pot?

A.    Yes, I am.

(2/26/09 Tr. at 49:25-52:13.)  (Habash has since confirmed, in many pleadings, that these were Debtor funds.)

92.    When confronted with questions regarding what he did with the $20 million, Bookstein could not account for it:

Q.    Now, after pocketing $20 million you know again?

MR. FRANKS:  Objection.  Argumentative.

THE WITNESS:  You really are nasty.

MR. DAPELO:  Wait, wait, wait, wait.

THE WITNESS:  Why would you say "pocketing"?  Why would you say pocketing?  You know, that sounds like ***I'm*** stealing 20 million.  Why do you use this kind of language?

BY MR. BERTZYK:

Q.    Well, Mr. Bookstein, you're taking money --

ARBITRATOR HAGEN:  Let's -- no, no, no.

THE WITNESS:  No, why are you using language "pocketing"?

Q.    Where did the money go?

A.    What did I pocket?

- 17 -

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

Q.    Where did the $3 million go?

A.    Prove to me what I pocketed.  How did I pocket anything?

Q.    Where did the $20 million go?

A.    Wait, wait.  Forget about that.  Why did you say I pocketed?

ARBITRATOR HAGEN:  All right.  Let's.

THE WITNESS:  I want an apology for saying I pocketed.

. . .

Q.    Mr. Bookstein, so we're clear, I didn't mean to suggest that you personally pocketed $20 million.

A.    Who did pocket it, then?

Q.    And I -- well, that's -- will you please tell me?  Which companies did the $20 million go to?

A.    I don't recall.

Q.    Are those companies still in business or have they dissolved already?

A.    I don't recall.

(*Id*. at 137:12-139:9.)

93.    The conclusions to be drawn from this questioning are obvious; indeed, they already have been drawn by Judge Highberger:

[I]t is obvious on this record that Louis Habash has a verified record of secreting funds away from their proper use in violation of his fiduciary and legal duties.  His accountant, Harvey Bookstein, is apparently both his victim and his accomplice in doing so.

94.    Upon information and belief, most of the $20.6 million was distributed as follows, to entities from whom Debtors received no benefit:

a.    On or about October 6, 2008, HABAC transferred, from its Pacific West  Bank account, at Bookstein's direction, approximately $2.2 million for the benefit of H-Airport.

b.    On or about October 6, 2008, HABAC transferred, from its Pacific West  Bank account, at Bookstein's direction, approximately $7,210,800 for the benefit of HSJP.

c.    On or about October 6, 2008, HABAC transferred, from its Pacific West  Bank account, at Bookstein's direction, approximately $7,031,800 for the benefit of HBD.

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

d.    On or about October 6, 2008, HABAC transferred, from its Pacific West Bank account at Bookstein's direction, approximately $4,005,600 for the benefit of HSJS.

e.    On or about June 9, 2009, a check made payable to HBD in the amount of approximately $151,666.66 was either written on or honored by the HABAC Pacific West Bank account.

### *Transfers of Real Property Purchased with Debtors' Settlement Proceeds*

95.    On December 12, 2008, a Grant Deed [Instrument No. 2008-0651526] was recorded with the Riverside County Recorder, granting real property (APN: 436-360-010-7) from the City of San Jacinto to defendant SJS and American Investment PTP, Inc..

96.    On August 25, 2009, less than one month after the Panel issued the Interim Award, Louis Habash, as manager for defendant SJS executed a Grant Deed transferring the property referenced in Paragraph 95 to defendant Redwood.

97.    As will be discussed later, this transfer took place only one day before Habash transferred from ASSI to HABAC the remainder of the $19.4 million ASSI received from Debtors' Settlement Proceeds.

98.    Two days after the Panel issued the Final Award—and only one week before Debtors filed their bankruptcy petitions— Klueger & Stein, LLP caused the August 25, 2009 Grant Deed to be recorded on October 29, 2009, Instrument No. 2009-0561583:  .

99.    Filed contemporaneously with the Grant Deed, Klueger & Stein caused to be recorded a Short Form Deed of Trust, Instrument No. 2009-0561582, also executed on August 25, 2009, in which Redwood is the Trustor and SJS the beneficiary of a referenced promissory note in the principal sum of $900,000.

100.    On information and belief, the real property referenced in the Grant Deeds

was purchased with funds originating from Debtors' Settlement Proceeds as follows: $20.6 million to HABAC, $4,005,600 from HABAC to HSJS, which the Trustee believes was then transferred to SJS to purchase the real property, which was then transferred by Habash, an insider, to Redwood, a company owned by another insider, defendant Allyn Burroughs.

101.    Trustee believes that discovery will prove that no such promissory note was ever executed, or in the alternative, that it was never the intent of Burroughs or Redwood to pay on the note, or SJS to collect on it.

**G.    The $19.4 Million Transferred to ASSI and Beyond**

102.    On or about October 6, 2008, $19.4 million was transferred from Fitzsimmons' trust account to ASSI.

103.    Among the transfers made from ASSI's various accounts were the following, for which the Trustee believes Debtors received no benefit:

a.    To defendant Mitos, a total of $1,050,000 transferred from ASSI on or about: 12/02/08 ($250,000); 3/19/09 ($500,000); 3/20/09 ($200,000); 7/21/09 ($100,000).

b.    To defendant APR and/or defendant APH (whose only business at the time was managing the Debtors mounting litigation):  a total of $655,000 transferred from ASSI on or about: 3/09/09 ($100,000); 3/20/09 ($200,000); 5/21/09 ($50,000); 6/12/09 ($75,000); 7/19/09 ($55,000); 8/02/09 ($125,000).

c.    To defendant Allen Matkins, a total of $355,000 transferred from ASSI, APH/APR and/or HABAC on or about: 8/19/09 ($200,000); 10/9/09 ($155,000).  On information and belief, Allen Matkins represented in the arbitration Debtors' attorney, Douglas Driggs, who was involved in, at least, the drafting of the original PSA. On information and belief, Allen Matkins represented Habash, alone, for some time before it entered into a representation

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST. SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST. SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

agreement with Debtors.  The Trustee believes these payments were applied to past due amounts for invoices related to the Driggs representation and for work done solely for Habash, or work done on behalf of both Habash and Debtors.

   d. To the Silverleaf Defendants, a total of $12,000 transferred from ASSI  on or about 4/16/09.

   e. To Gilchrist & Rutter, a total of $12,118, transferred from Inns, ASSI or HABAC on or about:  1/10/09 ($6,958); 2/17/09 ($1,235); 10/7/09 ($3,925).  The Trustee believes that discovery will show that Gilchrist &     Rutter did no work on behalf of Debtors, but were Bookstein's attorneys and Habash paid them using Debtors' assets as part of his stipulated judgment settlement of the defalcation action with Bookstein and the Inns investors.

   f. To Klueger & Stein, a total of $10,000, transferred from ASSI on or about  8/21/09.  On information and belief, Klueger & Stein's work did not benefit Debtors, but  was done on behalf of Habash (and Redwood/Burroughs) to transfer Debtors' assets.

**H.**  **Habash Closes ASSI's Account, Transferring Over $6 Million to HABAC**

  104. On or about August 26, 2009, after the Panel issued the Interim Award, and the day after L.A. Pacific secured the TPO, Habash closed the ASSI account and transferred to HABAC the balance of the $19.4 million Settlement Proceeds originally transferred to ASSI in 2008.  On information and belief, the remainder totaled over $6 million.

  105. The Trustee has reason to believe the following distributions, among others, were made from HABAC following the receipt of the ASSI transfer:

   a. To APIH, a total of $753,463, on or about 10/09/09 for which Debtors received no value;

   b. To Pictet, a total of $5 million, on or about 10/09/09, for which

Debtors received no value; and

c.    To Allen Matkins, $155,000, on or about 11/6/09, the day after the Petition Date.  This postpetition transfer was not authorized by any provision of the Bankruptcy Code or the Bankruptcy Court.

**I.    Habash Receives over $1 Million Personally,**
**Over and Above What He May Have Taken Through Other Entities**

106.    In addition to the transfers set forth above, according to the Inns accounting records, Habash personally received, or had paid on his behalf, over $1 million, paid on the following dates:   10/16/08 ($400,000 for credit card bills);  11/04/08 ($10,000); 3/30/09 ($60,000);  5/21/09 ($75,000);  6/28/09 ($160,000);  7/19/09 ($60,000);  7/27/09 ($80,000);  8/11/09 ($150,000).

107.    The Panel found Habash to be Debtors' alter ego.  The Los Angeles Superior Court confirmed the Panel's award and entered judgment against Habash on alter ego theory.  Mr. Habash is appealing the order and judgment on the basis of a procedural issue, but has not appealed the Panel's actual substantive findings.

108.    The Bankruptcy Court has not yet made a ruling on whether Habash is Debtors' alter ego, as that matter has not been before this Court as yet.  The Trustee has filed, or is filing contemporaneously with this complaint, a Complaint for Substantive Consolidation against Habash.

**J.    Summary**

109.    While embroiled in contentious litigation with L.A. Pacific over the sale of the property, Debtors settled their inverse condemnation action with the County.  Rather than keep the $40 million with Debtors—to whom it rightfully belonged—Habash caused the entire settlement amount to be transferred to two entities, neither of which were actual creditors of Debtors.  In other words, Debtors received little or no value for transferring its $40 million to ASSI or HABAC, and beyond.

110.    Debtors' attorneys and accountants knew that Debtors' Settlement Proceeds were the source of the money being paid from HABAC and ASSI's accounts, as the issue

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

had been raised often during the litigation and arbitration.

111.    Habash continues to mount attacks on the Trustee and L.A. Pacific in the Bankruptcy Court and has methodically delayed the Trustee's administration of the Estates.  The Trustee has reason to believe that at least some of the money used to fund the attacks originated with the Settlement Proceeds and is rightfully property of the Estates.

**K.    The Trustee Sought Return of the Estates' Assets from Most of the Defendants**

112.    The Trustee sent demand letters and/or spoke to the following Defendants seeking return of the fraudulent transfers or preference payments:

a.    Harvey A. Bookstein, on behalf of the Bookstein Defendants;

b.    Louis A. Habash;

c.    Allen Matkins;

d.    Fenigstein & Kaufman; and

e.    Kleuger & Stein.

113.    None of the Defendants listed in paragraph 94 have returned the property to the Estates.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Relief)**

114.    The Trustee realleges and incorporates each and every allegation contained in paragraphs 1 through 113 as though fully set forth herein.

115.    Debtors asserted—both in their inverse condemnation action and the litigation/arbitration with L.A. Pacific—that they were the sole owners of the airspace over which they brought the inverse condemnation action against Clark County.

116.    Debtors position was that, pursuant to the law, they alone were entitled to the compensation for the taking of the aerial rights of way of that airspace.

117.    The County agreed to pay Debtors $50 million to settle the inverse condemnation action.

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

118.    The Trustee seeks a Declaration that the $40 million in Settlement Proceeds was property of the Debtors and is, therefore, property of the Estates.

**SECOND CLAIM FOR RELIEF**

Against the Bookstein Defendants, Habash, ASSI, APR, APH,
the Silverleaf Defendants, Pictet, Mitos, Gilchrist & Rutter, Klueger & Stein, and APIH

**(Fraudluent Transfer - 11 U.S.C. § 548)**

119.    The Trustee realleges and incorporates each and every allegation contained in paragraphs 1 through 118 as though fully set forth herein.

120.    Pursuant to 11 U.S.C. § 548(a)(1):

The trustee may avoid any transfer . . . of an interest in property . . . that was made within 2 years before the date of the filing of the petition . . . if the debtor . . . (A) made such transfer . . . with the actual intent to hinder, delay or deferaud any entity to which the debtor was or became, on or after the date that such transfer was  made . . .indebted; or (B)(i) received less than reasonably equivalent value in exchange for such transfer . . . ; and (ii)(I) was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer . . . was engaged in business or a transaction . . . or made such a transaction for the benefit of an insider. . . .

121.    As set forth herein, the Settlement Proceeds were property of Debtors, which were and are property of the Estates

122.    Habash caused the Settlement Proceeds to be distributed to the Bookstein Defendants, Habash, ASSI, APR, APH, the Silverleaf Defendants, Pictet, Mitos, Gilchrist & Rutter, Klueger & Stein, and APIH.

123.    At the time defendants HABAC, and ASSI received the Settlement Proceeds from Debtors' attorney at Habash's direction, the Los Angeles Superior Court had already determined that L.A. Pacific was the prevailing party for the purpose of attorneys' fees as to Debtors' dismissal of their California complaint and L.A. Pacific's motion to compel arbitration and the attorney's fees were accruing at the statutory rate.

124.    At the time that each transfer was made, such transfer was made to or for the benefit of Habash who is an insider, and not for the benefit of Debtors.

125.    Trustee is not aware of equivalent value provided to Debtors from the

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

Defendants in exchange for the payments.  The Trustee, therefore, reasonably concludes that the transfers were in exchange for less than a reasonably equivalent value.

126.    Debtors, at the time the Settlement Proceeds were transferred to ASSI and HABAC had no other current assets.  Debtors were, therefore, insolvent and could not fund their existing litigation, yet they continued to incur debts beyond their ability to pay as such debts matured.

127.    In addition, Habash caused the transfers with the actual intent to hinder, delay or defraud creditors of Debtors, to wit, L.A. Pacific.

128.    ASSI and HABAC are the initial transferees and are strictly liable to Debtors pursuant to 11 U.S.C. §§ 548(a)(1) and 550.

129.    ASSI did not pay any consideration to Debtors for the $19.4 million.

130.    HABAC did not pay any consideration to Debtors for the $20.6 million.

131.    ASSI and HABAC transferred assets to the following defendants: Bookstein, H-Airport, HSJP, HBD, HSJS, RBZ, Habash, SJS, APR, APH, APIH, the Silverleaf Defendants, Pictet, Gilchrist & Rutter, Klueger & Stein, and Mitos.

132.    ASSI and HABAC made the transfers to the defendant listed in paragraph 122 with the actual intent to hinder, delay or defraud Debtors' creditors, and Debtors received no value for the transfers to these Defendants.

133.    In addition, at the time ASSI and HABAC transferred the assets to these defendants, Debtors were insolvent and could not fund their existing litigation, yet they continued to incur debts beyond their ability to pay as such debts matured.

134.    The payments or transfers as described above constitute recoverable fraudulent conveyance pursuant to 11 U.S.C. §548.

135.    The Trustee has reasaonable belief that the Defendants, each and every one of them, knew or should have known that the transferred monies were Debtors' property and subject to avoidance because Habash and/or Bookstein, Habash's accountant and investor, had a role in every other Defendant entity or had involved those entities in the transfer schemes.

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

136.   The Defendants are, therefore, liable to Debtors pursuant to 11 U.S.C. §§ 548(a)(1) and 550.

137.   The transfer of said assets occurred within two years of the filing of the Original Petition herein.

138.   Trustee is entitled to recover the value of the assets transferred based upon their value at the time of the transfer from Debtors, to wit:  in excess of $26 million.

139.   It has been necessary for the Trustee to retain the services of attorneys to bring and prosecute this action, and he is entitled to a reasonable sum as and for those attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
**Against Habash, SJS. Redwood, and  Burroughs**
**(Fraudulent Transfer – 11 U.S.C. § 548)**

140.   The Trustee realleges and incorporates by reference each and every allegation contained in paragraphs 1 though 139 of the Complaint as though fully set forth herein.

141.   As set forth herein, SJS purchased real property from the City of San Jacinto, the deed for which was recorded on December 12, 2008.

142.   Upon information and belief, the real property was purchased using assets from the Settlement Proceeds—which were and are property of the Estates—that were transferred to HABAC.

143.   Debtors received no consideration for the transfer of the money to HABAC or to SJS, which purchased the real property.

144.   Debtors have an equitable interest in the real property.

145.   On August 25, 2009, Habash caused to be transferred the real property from SJS to Redwood, of which Burroughs is the manager and, most likely, the owner.

146.   Burroughs is an insider of Debtors, as he is an officer in APH and APR, which managed the Debtors.

147.   Debtors received no value for the transfer of the real property to Redwood.

148.   Redwood did not pay any consideration for the real property, other than a

**HOWARD KIM & ASSOCIATES**
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

note for $900,000, which Trustee believes was made without the requisite intent to repay.

149.   Habash, SJS, Redwood, and Burroughs knew or should have known that the monies used to purchase the real property belonged to Debtors and that the transfer was subject to avoidance.

150.   At the time SJS, a Habash controlled company, transferred the real property to Redwood, Debtors were insolvent and could not fund their existing litigation, yet they continued to incur debts beyond their ability to pay as such debts matured.

151.   In addition, SJS made the transfer with the actual intent to hinder, delay or defraud Debtors' creditors.

152.   The transfer of the money to SJS and the transfer of the real property occurred within two years of the filing of the Original Petition herein.

153.   The transfers constituted a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1) and must be avoided pursuant to 11 U.S.C. §§ 548(a)(1) and 550.

154.   Trustee is entitled to recover the real property from Redwood.

155.   In the alternative, the Trustee is entitled to recover the value of the transferred assets based upon their value at the time of the transfer from Debtors, to wit: $900,000.

156.   It has been necessary for the Trustee to retain the services of attorneys to bring and prosecute this action and he is entitled to a reasonable sum as and for those attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
### Against Allen Matkins, Fenigstein & Kaufman, ASSI, HABAC, APIH, Pictet, Gilcrhist & Rutter, Habash, and Klueger & Stein
### (Preference Payments – 11 U.S.C. §§ 547, 550, and 551)

157.   The Trustee realleges and incorporates by reference each and every allegation contained in paragraphs 1 though 156 of the Complaint as though fully set forth herein.

158.   Pursuant to 11 U.S.C. § 547(b)

[T]he trustee may avoid any transfer of an interest of the debtor in property

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

**HOWARD KIM & ASSOCIATES**
400 N. STEPHANIE ST. SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

(1) to or for the benefit of a credotr; (2) for or on account of an atencendent debt owed by the debtor before the transfer was made; (3) made while the debtors ws insolvent; (4) made (A) on or within 90 days before the date of the filinig of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time was na insider; and (5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

159.    Debtors and/or ASSI, and HABAC, using money belonging to Debtors originating from the Settlement Proceeds, which were and are property of the Estates, made payments to APIH, Allen Matkins, Fenigstien & Kaufman, Gilcrhist & Rutter, Klueger & Stein, and Pictet within the ninety (90) days before the Petition Date.

160.    The payments made to Allen Matkins and Fenigstein & Kaufman were made to or for the benefit of the Defendants as creditors of Debtors.

161.    The Trustee believes the work done by Gilchrist & Rutter and Klueger & Stein was done for the benefit of Habash and/or Burroughs and Redwood.  But, if the work was done for the benefit of Debtors, then, in the alternative, the payments were made to or for these law firms' benefit as creditors of Debtors.

162.    The Trustee believes the transfers to APIH and Pictet were done for the benefit of Habash and/or the Bookstein defendants and are fraudulent.  But if the evidence shows these transfers were made for work done on behalf of Debtors, then the Trustee alleges, in the alternative, that the payments were made to these Defendants as creditors of Debtors.

163.    These payments were for or on account of an antecedent debt allegedly owed by Debtor to the Defendants before the payments were made.

164.    The payments were made within 90 days of Debtors' bankruptcy.

165.    The payments were made while Debtors were insolvent.

166.    The payments enabled the Defendants to receive more than they would have received if the Debtors were in chapter 7 and the transfers had not been made because the debtors' summary of schedules show that liabilities exceeded assets.

**HOWARD KIM & ASSOCIATES**
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

167.   The transfers made to the defendants named in paragraph 159, and any other transfers to those or unknown defendants within the ninety days prior to the Petition Date, are avoidable preferences pursuant to 11 U.S.C. § 547(b).

168.   The Trustee is entitled to recover the value of the assets transferred based upon their value at the time of the transfer from Debtors.

169.   It has been necessary for the Trustee to retain the services of attorneys to bring and prosecute this action and he is entitled to a reasonable sum as and for those attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF
#### Against HABAC, Bookstein, Habash, ASSI, APIH, APR, APH, Redwood
#### (ASSI, APIH, APR, APH together the "Nevada Defendants")
#### (Fraudulent Tranfer – Nev. Rev. Stat. § 112.140 et seq.)

170.   The Trustee realleges and incorporates by reference each and every allegation contained in paragraphs 1 though 169 of the Complaint as though fully set forth herein

171.   The original source of Debtors property—$40 million, which was transferred to the above named Defendants—was the payment of the Settlement Proceeds through Debtors' attorney's trust account in Nevada, which were and are property of the Estates.

172.   Pursuant to Nev. Rev. Stat. § 112.180(1), in pertinent part:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . if the debtor made the transfer. . .:(a) with actual intent to hinder, delay or defraud any creditor or debtor; or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtors were unreasonably small in relation to the business or transaction; or (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond his or her ability to pay as they became due.

173.   The transfers to ASSI and HABAC were made within four years prior to the Petition Date.

174.   Trustee is not aware of equivalent value provided to Debtors from the defendants in exchange for the payments, and therefore, Trustee reasonably concludes that the transfers were in exchange for less than a reasonably equivalent value.

175.   The transfers were made with the actual intent to hinder delay or defraud any entities to which the Debtors were or became, on or after the date of such transfers were made, indebted.

176.   The Trustee is unaware of any value given Debtors in exchange for such transfers.

177.   The Transfers as to Habash, APH, and APR were made to insiders, as Habash was the Debtors' owner, and APR and APH were managers of Debtors.

178.   As set forth herein, at the time Debtors settled the inverse condemnation action with the County, they had initiated costly litigation against L.A. Pacific and the Los Angeles Superior Court had already determined that L.A. Pacific was the prevailing party for the purpose of attorneys' fees as to Debtors' dismissal of their California complaint and L.A. Pacific's motion to compel arbitration.   Debtors, at the time the Settlement Proceeds were transferred to ASSI and HABAC had no other significant assets.    Debtors, therefore, were insolvent and could not fund their existing litigation, yet they continued to incur debts beyond their ability to pay as such debts matured.

179.   In addition, Habash caused the transfers with the actual intent to hinder, delay or defraud creditors of Debtors, to wit, L.A. Pacific.

180.   Each and every Defendant knew or should have known of Debtors' litigation and of Debtors' financial status as Bookstein and his entities were Debtors' and Habash's accountants and investors, Habash and Burroughs were Debtors' insiders and/or owners/officers/managers of ASSI, APH, APR, and Redwood, and APIH's manager provided inside information to Debtors' accountants about Debtors' books and finances.  Accordingly, the Trustee alleges that none of the Defendants took in good faith or with reasonably equivalent value.

181.   The Transfers were fraudulent convenyances pursuant to Nev. Rev. Stat. §§

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST. SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

112.140 et seq.

182.    Trustee is entitled to recover the value of the assets transferred based upon their value at the time of the transfer from Debtors, to wit:  in excess of $26 million

183.    It has been necessary for the Trustee to retain the services of attorneys to bring and prosecute this action and he is entitled to a reasonable sum as and for those attorneys' fees and costs.

### SIXTH CLAIM FOR RELIEF

Against The Bookstein Defendants, Habash, SJS, Pictet, Mitos, the Silverleaf Defendants (together, the California Defendants), Redwood, and Burroughs
**(Fraudulent Tranfer – Cal. Civ. Code  §§ 3439 et seq.)**

184.    The Trustee realleges and incorporates by reference each and every allegation contained in paragraphs 1 though 183 of the Complaint as though fully set forth herein.

185.    The California Defendants received transfers of monies belonging to Debtors pursuant to the Settlement Agreement with Clark County Nevada.  The assets were transferred either directly to the California Defendants or from the initial transfers made to ASSI and HABAC.

186.    Defendant Redwood received the transfer of real property located in the State of California that the Trustee alleges was purchased with assets transferred from Debtors Settlement Proceeds, which were and are property of the Estates.

187.    The Trustee alleges that defendant Burroughs, who controls or owns Redwood, ultimately benefits from the Redwood transfer.

188.    Pursuant to Cal. Civ. Code. § 3439.04(a), in pertinent part:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . if the debtor made the transfer as follows: (1) With actual intent to hinder, delay or defraud any creditor or debtor. (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtors were unreasonably small in relation to the business or transaction. (B) Intended to incur, or believed or reasonably should have believed that the debtor

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

would incur, debts beyond his or her ability to pay as they became due.

189.    The transfers to the California Defendants, Redwood, and Burroughs were made within four years prior to the Petition Date.

190.    Trustee is not aware of equivalent value provided to Debtors from the defendants in exchange for the payments, and therefore, Trustee reasonably concludes that the transfers were in exchange for less than a reasonably equivalent value.

191.    The Transfers as to Habash, SJS and Burroughs were made to insiders, as Habash was the Debtors' owner, Habash was an owner, officer or manager of SJS, and Burroughs was an officer of Debtors' managers, APR and APH.

192.    As set forth herein, at the time Debtors settled the inverse condemnation action with the County, they had initiated costly litigation against L.A. Pacific and the Los Angeles Superior Court had already determined that L.A. Pacific was the prevailing party for the purpose of attorneys' fees as to Debtors' dismissal of their California complaint and L.A. Pacific's motion to compel arbitration.  Debtors, at the time the Settlement Proceeds were transferred to ASSI and HABAC had no other significant assets.   Debtors, therefore, were insolvent and could not fund their existing litigation, yet they continued to incur debts beyond their ability to pay as such debts matured.

193.    In addition, the transfers were made with the actual intent to hinder delay or defraud any entities to which the debtors were or became, on or after the date of such transfers were made, indebted.

194.    Each and every defendant knew or should have known of Debtors' litigation and of Debtors' financial status as Bookstein and his entities were Debtors' and Habash's accountants, Bookstein controlled, owned, or was an officer in the H-defendants, and Habash and Burroughs were Debtors' insiders.  Accordingly, the Trustee alleges that none of the defendants took in good faith or with reasonably equivalent value.

195.    The Transfers were fraudulent convenyances pursuant to Cal. Civ. Code §§ 3439 et seq.

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

196.    Trustee is entitled to recover the value of the assets transferred based upon their value at the time of the transfer from Debtors, to wit:  in excess of $26 million

197.    It has been necessary for the Trustee to retain the services of attorneys to bring and prosecute this action and he is entitled to a reasonable sum as and for those attorneys' fees and costs.

### SEVENTH CLAIM FOR RELIEF
Against Habash, ASSI, HABAC and Allen Matkins
### (Unauthorized Post-Petition Transfer – 11 U.S.C. § 549.)

198.    The Trustee realleges and incorporates by reference each and every allegation contained in paragraphs 1 though 197 of the Complaint as though fully set forth herein.

199.    Upon information and belief, on November 6, 2009, the day after the Petition Date, HABAC transferred $155,000 to Allen Matkins.

200.    Upon information and belief, the source of the payment was the Settlement Proceeds belonging to Debtors, which was originally transferred to ASSI in October 2008 and then to HABAC in August 2009, which were and are property of the Estates.

201.    The postpetition payment was not authorized by any provision of the Code or the Bankruptcy Court.

202.    Debtors never applied for and Allen Matkins was never authorized to work for Debtors after the Petition Date.

203.    Allen Matkins never filed, and the Bankruptcy Court never approved, a fee application.

204.    Allen Matkins knew or should have known at the time of the transfer that the source of the payment was property of Debtor because Allen Matkins, having represented both Habash and Debtors in the underlying litigation, is charged with full knowledge of the record in all proceedings, including Habash's transfer of ASSI's assets to HABAC.

205.    By viture of the foregoing, the Trustee avers that the postpetition payment is an voidable transfer pursuant to 11 U.S.C. § 549(a).

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

206. In the alternative, the $155,000 is an avoidable fraudulent transfer pursuant to 11 U.S.C. § 548.

207. Trustee is entitled to recover the value of the assets transferred based upon their value at the time of the transfer from Debtors.

208. It has been necessary for the Trustee to retain the services of attorneys to bring and prosecute this action and he is entitled to a reasonable sum as and for those attorneys' fees and costs.

### EIGHTH CLAIM FOR RELIEF
#### Against Habash, Pictet, Redwood, and Burroughs
#### (Turnover Property of the Estates – 11 U.S.C. § 542.)

209. The Trustee realleges and incorporates by reference each and every allegation contained in paragraphs 1 though 208 of the Complaint as though fully set forth herein.

210. The San Jacinto real property is property of the bankruptcy estate pursuant to § 541, as the real property was purchased using funds belonging to the Estate as set forth in paragraph 100.

211. The Trustee believes that Pictet is a transferee of the $5 million transferred from HABAC and that the transfer was fraudulent and avoidable under § 548, as set forth in the first and second prayers for relief.

212. In the alternative, Pictet is a bank holding an account in which the Estates have a legal or equitable interest, as the account was funded from the Settlement Proceeds which were and are property belonging to the Estates. Upon information and belief, Habash or his agent has legal title to the Pictet bank account.

213. Pursuant to 11 U.S.C. § 542, Redwood and Burroughs should be ordered to turn over title to the San Jacinto real property to the Trustee.

214. Pursuant to 11 U.S.C. § 542, Pictet should be ordered to turn over title to, or the actual funds held in, the Pictet bank account to the Trustee.

### NINTH CLAIM FOR RELIEF
#### Against All Defendants
#### (Recovery for the Estates – 11 U.S.C. § 550.)

HOWARD KIM & ASSOCIATES
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

215.   The Trustee realleges and incorporates by reference each and every allegation contained in paragraphs 1 though 214 of the Complaint as though fully set forth herein.

216.   The $40 million in Settlement Proceeds were the property of Debtors, pursuant to the Settlement Agreement with Clark County.

217.   The Defendants either caused and/or were transferees of Debtors' fraudulent transfers, preferential payments, or unauthorized postpetition payments.

218.   The fraudulent transfers, preferential payments, and unauthorized postpetition payments, totaling in excess of $26 million, to the extent that they are avoided pursuant to §§ 547, 548, and 549 of the Code may be recovered by the Trustee pursuant to § 550 of the Code.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee prays that this Court enter a judgment on this Complaint in favor of the Trustee as follows:

1.   A declaration that the $40 million Settlement Proceeds from the settlement of the inverse condemnation action were property of Debtors and, therefore, are property of the Estates.

2.   A judgment avoiding all void and/or unlawful transfers pursuant to applicable law; providing for recovery to the Trustee from the appropriate Defendants of all transfers that were improper and unlawful; and providing for recovery to the Trustee from the appropriate Defendants of the property transferred or its value pursuant to 11 U.S.C. § 550.

3.   Attorneys' fees, costs, and such other and further relief to which the Trustee may be entitled.

*/s/Jacqueline A. Gilbert*
HOWARD C. KIM, ESQ.
Nevada Bar No. 10386
JACQUELINE A. GILBERT, ESQ.

**HOWARD KIM & ASSOCIATES**
400 N. STEPHANIE ST, SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

- 35 -

1   Nevada Bar No. 10593
    HOWARD KIM & ASSOCIATES
2   400 N. Stephanie St. Suite 160
    Henderson, Nevada 89014
3   *Attorneys for* David A. Rosenberg, Chapter
    7 Trustee
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HOWARD KIM & ASS0CIATES**
400 N. STEPHANIE ST., SUITE 160
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301